UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KALEE R.,

                                                                                                      DECISION AND ORDER

                        Plaintiff,

                                                                                                      20-CV-1716L

                v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.
_____


       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On January 16, 2018, plaintiff, then twenty-two years old, filed applications for a period of disability and disability insurance benefits, and supplemental security income ("SSI"), alleging an inability to work since September 2, 2017. (Dkt. #13 at 15). Those applications were initially denied. The plaintiff requested a hearing, which was held by videoconference on December 19, 2019, before administrative law judge ("ALJ") Stephan Bell. The ALJ issued an unfavorable decision on January 24, 2020, finding plaintiff not disabled. (Dkt. #13 at 15-27). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 22, 2020. (Dkt. #13 at 1-3).

       The plaintiff has moved for reversal of the Commissioner's determination (Dkt. #20), and the Commissioner has cross moved (Dkt. #23) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, including treatment and surgical records reflecting Charcot-Marie-Tooth disease ("CMT"),[1] right hip replacement, right foot drop and subtalar talonavicular (ankle) joint fusions, left foot first metatarsocuneiform joint fusions and release of plantar fascia, major depressive disorder, generalized anxiety disorder, unspecified anxiety disorder, and unspecified depressive disorder. The ALJ concluded that these conditions together constituted a severe impairment not meeting or equaling a listed impairment, after giving particular consideration to Listing 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). (Dkt. #13 at 18).

Applying the special technique for mental impairments, the ALJ found that plaintiff had mild limitations in understanding, remembering, and applying information, mild limitations in

---

[1] According to the Merck Manual, Charcot-Marie-Tooth disease is a hereditary neuropathy which can, "affect[] nerves that control muscle movement and those that carry sensory information to the brain . . . symptoms may begin in middle childhood or adolescence. Weakness begins in the lower legs. It causes an inability to flex the ankle to lift the front part of the foot (footdrop) and wasting away of the calf muscles (stork leg deformity). Later, hand muscles begin to waste away. The hands and feet become unable to sense position, vibration, pain, and temperature, and this loss of sensation gradually moves up the limbs . . . [n]o treatment can stop the progression of [CMT]." *See* Merck Manual Consumer Version, https://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/peripheral-nerve-and-related-disorders/charcot-marie-tooth-disease (last visited April 7, 2022).

interacting with others, mild limitations in concentration, persistence, and pace, and moderate limitations in adapting and managing herself. (Dkt. #13 at 19-20).

On consideration of the entire record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with the ability to lift, carry, push and pull up to 10 pounds occasionally and under 10 pounds frequently, stand and walk for up to 2 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. She can occasionally balance or stoop, and "less than occasionally" kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds, work at unprotected heights or around moving mechanical parts, or operate a motor vehicle. She can no more than occasionally work around vibration. Finally, she is limited to simple and routine tasks, involving only simple work-related decisions. (Dkt. #13 at 20).

When provided with this RFC as a hypothetical at the hearing, vocational expert Dale Pasculli testified that such an individual could perform the representative sedentary positions of addresser, document preparer, and polisher of eyeglass frames. (Dkt. #13 at 26). The ALJ accordingly found plaintiff not disabled.

**I.    The ALJ's Weighing of Medical Opinion Evidence of Exertional Limitations**

Plaintiff argues that the ALJ failed to properly assess plaintiff's RFC with respect to the use of her hands, arms, and feet, and overlooked or improperly characterized evidence from medical opinions concerning plaintiff's limitations.

The Court agrees.

Pursuant to recent amendments to agency regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider all medical

3

opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate their consideration of the medical opinion evidence, including how persuasive they find the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Commissioner*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022).

The record contained three RFC opinions relating to plaintiff's exertional capacity. The first was an April 26, 2018 opinion by consulting surgical specialist Dr. Russell Lee. (Dkt. #14 at 1096-1100). Dr. Lee described plaintiff's history of CMT and hip replacement, and foot drop on the right side, for which a corrective brace had been prescribed, the wearing of which had caused deterioration of plaintiff's right knee cartilage. On her left leg, plaintiff had a fractured left foot for which she was wearing a prescribed boot, and a dislocated left patella. Dr. Lee noted steppage gait (inability to lift foot due to weakness) on the right side, and limited squat. Reflexes were significantly diminished at 1+/5 bilaterally, plantar flexion (ability to push the foot downward) was reduced to 3/5, and dorsiflexion (ability to extend the foot at the ankle) was entirely absent, at 0/5 on the right side. Hand and finger dexterity and strength were found to be normal. Dr. Lee opined that plaintiff had "moderate to severe" limitations for walking, bending, lifting and carrying heavy objects, and moderate limitations for prolonged standing, kneeling and reaching. (Dkt. #14 at 1099). The ALJ found Dr. Lee's opinion "not persuasive," on the grounds that his examination

results had been "essentially normal," and that plaintiff had later undergone surgery on her left foot which "improved" her symptoms. (Dkt. #13 at 23).

The record also contained an opinion from consulting neurologist Dr. Bennett Myers, who examined plaintiff on May 17, 2019. (Dkt. #13 at 1222-24). Plaintiff reported progressive problems with weak and shaky hands, hand spasms, poor balance with "two falls a week on average," and intermittent sharp pains in her hands and feet. (Dkt. #13 at 1222). On examination, Dr. Myers noted diminished strength in the fingers, hands, wrists, and hamstrings, with "pronounced" atrophy of the foot muscles and "moderate" atrophy of the leg muscles, and "[d]iminished tone throughout." (Dkt. #13 at 1223-24). Reflexes were "absent throughout including patellar, Achilles, biceps, triceps, and [forearm muscle]." (Dkt. #13 at 1224). Plaintiff could not tiptoe or walk heel to toe, and exhibited moderate steppage gait in both feet. Vibratory sensation was diminished in the fingers and wholly absent in the toes, and pinprick sensation was diminished in the hands and bottom third of the legs. *Id*.

Dr. Myers recommended the use of bilateral ankle braces and indicated that plaintiff should "use a cane at all times." He opined that "[b]ased on her degree of weakness [in the] lower extremities, imbalance, [and] weakness in the hands she is 100% disabled. She does not have the hand strength or endurance to do even sedentary work." (Dkt. #13 at 1224). The ALJ found Dr. Myers' opinion to be "not persuasive," indicating that his examination findings "showed only diminished tone and vibratory sensation, and [contained] no function-by-function analysis." (Dkt. #13 at 23). As a result, the ALJ declined to incorporate any of the limitations Dr. Myers had indicated relative to plaintiff's use of her hands, or her need for assistive devices and ankle braces.

Finally, the record contained an opinion by state agency reviewer J. Lawrence, who reviewed the record prior to the addition of Dr. Myers's opinion, and determined that plaintiff

could perform a range of work at the sedentary exertional level (Dkt. #14 at 72, 73), with no more than occasional climbing of ramps and stairs, balancing, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, and no pushing of pedals. (Dkt. #14 at 61-72). The ALJ stated that he found this opinion "persuasive," as it was "supported by a review and summary of the medical evidence available at the time." (Dkt. #13 at 24).

Initially, the ALJ's finding that Dr. Lee's and Dr. Myers's opinions were "not persuasive" because they were contradicted by their objective examination findings and by evidence of subsequent surgery, was factually erroneous, and unsupported by a reasonable interpretation of the record.[2]

The ALJ described Dr. Lee's examination findings as "essentially normal," when those findings included muscle tenderness in the knees, left ankle, and arms, diminished reflexes in the knees and biceps, significantly reduced ability to extend the ankle or push with the foot, steppage gait on the right side, and squat reduced to ¼ of full. (Dkt. #13 at 23, Dkt. #14 at 1099). Furthermore, while the ALJ suggested that plaintiff's symptoms "improved" subsequent to Dr. Lee's examination, and that Dr. Myers's examination one year later had "showed only diminished tone and vibratory sensation," the record does not support such a conclusion. The record indicates that plaintiff continued to complain of left foot pain and to exhibit diminished range of motion following her surgery (Dkt. #14 at 1209-11), and Dr. Myers noted a number of significant abnormalities suggestive of a *worsening* of plaintiff's symptoms from the previous year, including steppage gait in both feet, diminished strength in the hands, fingers, wrists, and lower legs,

---

[2] While the ALJ was not obligated to credit Dr. Myers's statement that plaintiff was "100% disabled" since opinions on the ultimate issue of disability are "not entitled to any weight," *Taylor v. Barnhart*, 83 Fed. App'x 347, 349 (2d Cir. 2003), the ALJ was still required to consider "the objective findings upon which th[at conclusion] w[as] based." *Latricia S. v. Kijakazi*, 2021 U.S. Dist. LEXIS 236235 at *7 n.1 (W.D.N.Y. 2021)(ALJ's failure to acknowledge or distinguish physician's objective findings in weighing a medical opinion "suggests improper cherry-picking of the record").

6

moderate-to-pronounced muscle atrophy in the hands, feet and legs, "absent" reflexes in the knees, ankles and arms, and diminished sensation in the hands and lower legs. (Dkt. #14 at 1223-24).

Indeed, even the ALJ's terse summary of the opinion of the state agency reviewer as "consistent with the ability to perform light work" was not correct. (Dkt. #13 at 24). To the contrary, the reviewer indicated repeatedly that their opinion was for a limited range of "sedentary" work. (Dkt. #13 at 72, 73). Further, even while finding the reviewer's opinion to be the only "persuasive" one, the ALJ failed to include all of the limitations it contained in the RFC determination, without setting forth any reason why.

While an ALJ is free to pick and choose between well-supported medical opinions, and need not rely exclusively on any one medical opinion in formulating an RFC, reliance on a generalized misapprehension of the evidence is reversible error. *See Love v. Colvin*, 2016 U.S. Dist. LEXIS 136422 at *21 (W.D.N.Y. 2016). Here, the ALJ's gross misinterpretation of Dr. Lee's and Dr. Myers's objective findings, and mischaracterization of the conclusions reached in all three of the medical opinions of record concerning plaintiff's exertional RFC, polluted the ALJ's conclusions concerning the consistency and supportability of those opinions, amounted to an improper substitution of the their lay opinion for competent medical evidence, and deprived their findings of substantial support. Remand is therefore required.

**III.   The ALJ's Step Three Analysis**

While plaintiff has not objected to the ALJ's Step Three findings (concerning whether plaintiff's severe impairments meet or equal a listed impairment), the Court observes that in light of plaintiff's severe impairment of CMT and record evidence suggesting a gradually worsening level of impairment in plaintiff's upper and lower extremities along with balance and gait abnormalities – as can sometimes be expected with CMT (see note 1, *infra*) – a proper Step Three

analysis should include consideration of whether plaintiff is disabled pursuant to Listing 11.14, for peripheral neuropathy. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, §11.14(A)(disability under Listing 11.14 requires proof of "peripheral neuropathy, characterized by . . . [d]isorganization of motor function in [at least] two extremities, resulting in an extreme limitation in the ability to . . . balance while standing or walking, or use the upper extremities"). *See e.g.*, *Ashby v. Berryhill*, 2018 U.S. Dist. LEXIS 60715 at *7-*8 (W.D. Wash. 2018)("CMT is an impairment that is considered under Listing 11.14, peripheral neuropathy"); *Dreher v. Commissioner*, 2016 U.S. Dist. LEXIS 124781 at *30 (N.D. Ohio 2016)("limitations caused by Charcot-Marie-Tooth disease, determined by the ALJ as a severe impairment, are properly analyzed under subsection 11.14").

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of legal error.

The plaintiff's motion for judgment on the pleadings (Dkt. #20) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #23) is denied, and the matter is remanded for further proceedings. On remand, the ALJ is instructed to reassess plaintiff's claim and to issue a new decision. Such assessment should include: (1) consideration at Step Three of whether plaintiff satisfies the requirements of Listing 11.14; (2) supplementation of the record with additional consultative reports, clarification from Dr. Lee and/or Dr. Myers, and/or medical expert

testimony, as appropriate; and (3) engagement in a detailed and well-reasoned discussion of the medical opinions, objective findings, and other evidence of record.

    IT IS SO ORDERED.

                                              _____
                                                   DAVID G. LARIMER
                                                United States District Judge

Dated: Rochester, New York
       April 14, 2022.